### AMERICAN METAL CAP CO. v. PHŒNIX-HERMETIC CO.

(Circuit Court of Appeals, Second Circuit. April 9, 1923.)

No. 223.

Patents ⬤⇒328—1,160,596, for device relating to tops of jars, held valid and infringed.

Hammer patent, No. 1,160,596, of November 16, 1915, for a device relating to the caps or tops of jars, *held* to involve patentable invention, valid, and infringed.

Appeal from the District Court of the United States for the Eastern District of New York.

Patent infringement proceeding by the American Metal Cap Company against the Phœnix-Hermetic Company. Decree for plaintiff (284 Fed. 609), and defendant appeals. Affirmed.

Suit is upon claims 3, 4, 7, 8, and 9 of patent to Hammer, No. 1,160,596, granted November 16, 1915, on application filed August 8, 1912. The invention is one of the very large class of devices relating to the caps or tops of jars and according to the disclosure the "principal object of the invention is to provide an improved form of in-pressed rib or projection to engage the inclined thread of the jar or bottle."

Of the claims in suit one only refers to any peculiarity in structure of the jar to which the cap is to be applied, viz. the third, which reads as fol-

lows: "The combination with a jar or bottle having a plurality of separated inclined threads, of a bottle cap comprising a top and flange, said flange having therein a plurality of inwardly extending ribs, each being narrow and shallow at one end and wide and deep at the other end, the lower edge of each rib being parallel with the lower edge of the flange and the upper edge of each rib being parallel with the pitch of the separated threads and downwardly inclined with relation to the top of the cap, substantially as described."

The remaining claims relate only to the structure of the cap or closure. The fourth claim describes plaintiff's cap most fully, and is as follows: "A cap having a flange provided with a strengthened edge, said flange having corrugations terminating short of the edge and one or more inwardly extending projections located between the edge and the corrugations, said projections, being relatively narrow and shallow at one end and relatively wide and deep at the other end the lower edge of the projections being substantially parallel with the strengthened edge and the upper edge being inclined thereto, the relatively wide ends of the projections extending entirely across the space between the corrugations and said strengthened edge."

It being understood that the cap is of metal capable of being rolled or pressed by the machinery which forms it, it may be pointed out that "strengthened edge" means nothing more than an edge of metal turned back and upon itself, a well-known device which does give additional strength to that portion of the metal, but especially prevents cutting or laceration of the hands of those exercising force in attaching or detaching the jar cap. The "projections" referred to are stated in the foregoing claim as being "substantially parallel" with the edge aforesaid at their lower extremity. The same idea is expressed in the seventh claim, by stating that the "sides" of such projections are "relatively close" to the said edge. The eighth claim describes the said projection side as "relatively close to and parallel with" the edge aforesaid, while the ninth declares that the projections are "in close proximity" to the edge over "substantially their entire length."

The lower court found the patent valid and infringed, and defendant appealed.

Otto Munk, of New York City (Charles Neave, of New York City, and Charles L. Sturtevant and Eugene G. Mason, both of Washington, D. C., of counsel), for appellant.

C. A. Weed and John R. Nolan, both of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The patentee came into a very crowded art, yet one with which he had gained familiarity by receiving earlier patents, Nos. 821,488, 894,633, and 1,028,718. His prior inventions assist in assigning the patent at bar to its proper place in the art.

The numerous jar or bottle closures, fastening after more or less rotation and in evidence here, fall into three classes, as pointed out by appellant: First, the screw cap typified by the well-known Mason cover (726,321), and exhibiting correlative threads (continuous or multiple) on cap and jar; second, the lug cap, exhibiting lugs or projections on inner side of cap flange, passing between and/or underneath separated ribs on jar; third, caps having lugs adapted to function with jars threaded substantially as in the first class.

It is asserted and admitted that plaintiff's device belongs to the second class; the defense is that the alleged infringing article belongs to the first. The third may be disregarded in this litigation. The

admitted patentability of plaintiff's device does not rest (as seems to be thought) on the knurling or corrugation of the upper portion of cap flange, nor on the "strengthened" lower edge thereof, nor on the junction of these old attributes; it rests solely on the peculiarity of the lug shape, which as seen on the cylindrical flange of the cap has the section of a spherical triangle and is in its depression from the exterior flange surface, deep at the base and shallow at the apex.

The well known and quite obvious advantages of the first class of closures are simplicity and security. The cap merely "screws on," with as many revolutions as the length of flange, height of jar top, and pitch of thread permit; but, once fast, these caps are often difficult of removal. The advantages of the second class are that the cap can be seated by slipping it on the jar top, the lugs being directed clear of the separate jar top ribs, and then the cap is set or fastened by a partial revolution thereof. Such caps require almost no "screwing up." The disadvantages are that short lugs or small projections give little bearing surface, and the caps lack security and perhaps strength.

Plaintiff's cap, with triangular lugs deep at the base and shallow at the apex can with some nicety be seated without rotation, by accurately placing the shallow apices of the lugs over the lowest parts of the jar top ribs; and complete engagement is then produced by less than a quarter turn (we refer, of course, to the exhibits in evidence). But most users will merely turn and press the cap until it "catches." This means that plaintiff has a true lug, but so large and so peculiarly shaped that, when furnished with appropriate jar ribs, it seems to screw up with much less than one revolution of the cap, and when driven "home" has a bearing surface quite sufficient for security. This is plainly patentable invention.

The cap alleged to infringe can be made to respond in technical terms to the description of a cap of the first class. It has multiple cap threads, extending substantially from top to bottom of inner flange surface, and corresponding multiple ribs on the jar; further, it is quite true that any continuous thread cut or pressed in an article like a cap will exhibit a shallowing at its plane of intersection—i. e., the lower edge of flange. It is also true that defendant's cap does "screw on"; .i. e., it requires the familiar wrist motion of the Mason jar. But we are convinced that this resemblance is deceptive in result; whether intentionally deceptive we need not ascertain. The flange thread is peculiar, in that it is so additionally depressed in its middle that the entire "thread" looks like and is two triangular lugs with bases joining. Put in another way, it is true that defendant's "thread" may by bisection produce two of plaintiff's lugs whereof the lower one does all the useful work.

This means that, when defendant's cap is affixed, it screws on truly enough, to all appearance; but it never does anything more than drive home so much of its "thread" as perfectly represents one of plaintiff's lugs. The upper half of defendant's thread might just as well be abolished.

We thus agree with the lower court, and affirm the decree appealed from, with costs.